IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| STEVE PASCHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-cv-02799-SHL-tmp |
| ) | |
| MEMPHIS LIGHT, GAS AND WATER ) | |
| DIVISION a/k/a THE LIGHT, GAS AND ) | |
| WATER DIVISION OF THE CITY OF ) | |
| MEMPHIS, TENNESSEE, and the PENSION ) | |
| BOARD OF THE MEMPHIS LIGHT, GAS ) | |
| AND WATER DIVISION RETIREMENT ) | |
| AND PENSION SYSTEM, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment, filed November 21, 2024, by Defendants Memphis Light, Gas and Water Division a/k/a the Light, Gas and Water Division of the City of Memphis, Tennessee, and the Pension Board of the Memphis Light, Gas and Water Division Retirement and Pension System. (ECF No. 26.) Plaintiff Steve Paschall filed his response on December 19, 2024. (ECF No. 28.) Defendants filed their reply on January 2, 2025. (ECF No. 30.)[1] For the reasons stated below, the motion is **DENIED**.

**BACKGROUND**[2]

This case is about the denial of benefits under a retirement plan. Paschall worked as an engineer for Memphis Light Gas & Water ("MLGW"), from December 11, 1989, until his

---

[1] On February 13, 2025, Defendants filed a Notice of Filing the Chancery Court's Findings of Fact and Conclusions of Law in a Case Between the Same Parties. (ECF No. 33.)
[2] The factual recitation included is undisputed, unless otherwise noted.

termination on July 13, 2016. (ECF No. 29 at PageID 701–02.) As part of Paschall's employment, he was required to participate in the MLGW Division Retirement and Pension System (the "Pension Plan"), into which he paid approximately eight percent of every paycheck during his employment. (ECF No. 31 at PageID 1696.) Paschall became eligible to apply for a monthly pension benefit upon his termination. (ECF No. 29 at PageID 702.) Before he did so, Paschall filed a charge of discrimination with the EEOC and a lawsuit against MLGW ("Paschall I"), in which he sought reinstatement and backpay. (Id. at PageID 703.)[3]

Upon his termination, Paschall "understood that any election made for his retirement benefits was irrevocable." (ECF No. 31 at PageID 1698.) He did not discuss with anyone at MLGW, including anyone with the Pension Department or the Pension Board, if he could retire but later unretire. (ECF No. 29 at PageID 705.) He elected to not apply for his pension benefit upon his termination, for fear of "negat[ing] the lawsuit," and, in so doing, he relied on his interpretation of documents governing the Pension Plan. (Id. at PageID 704, 720.)

The Pension Plan is governed by the Plan Document, as amended and restated January 1, 2015. (Id. at PageID 720.) Section 7.6 of the Plan Document provides the following:

> Failure to Apply for Benefits. Each Participant and Beneficiary, or his/her representative, shall be responsible for making application, in accordance with uniform procedures established by the Pension Board, for any benefit due him/her under the Plan. A Participant or Beneficiary shall have no claim against the Fund for any retroactive payment by reason of the failure of such Participant or Beneficiary to properly or timely apply for benefits under the Plan.

(Id. at PageID 720.) Similarly, in outlining the benefits application process, the 2016 Summary Plan Description and the 2018 Summary Plan Description each contain the following identical

---

[3] On January 11, 2022, the Court granted MLGW's Motion for Summary Judgment in Paschall I. (See Paschall v. Memphis Light, Gas & Water, No. 2:17-cv-2280-MSN-tmp (ECF No. 134).)

2

language: "[i]f you or your beneficiaries fail to apply timely for benefits, you will not have any claim against the Pension Fund for any retroactive payment under the plan." (Id. at PageID 721.) Paschall acknowledges having had possession of, and access to, the 2016 Summary Plan. (Id. at PageID 703.)

At the same time, the Plan Document asserts that "a Participant's Accrued Benefit shall become one hundred percent (100%) vested and nonforfeitable (i) upon his/her attainment of Normal Retirement Age while still employed as an Employee of the Division, (ii) upon complete discontinuance of Contributions as provided in §3.2(b), or (iii) the termination of the Plan as provided in § 112." (ECF No. 27-16 at PageID 598.) Paschall attained the Normal Retirement Age prior to his termination. (ECF No. 31 at PageID 1696.)

On May 10, 2022, about four months after MLGW was granted summary judgment in Paschall I, Paschall submitted his first application to MLGW for monthly pension benefits. (ECF No. 29 at PageID 714; ECF No. 27-11.) In that application, Paschall included language related to Title VII's prohibition on retaliation,[4] which obscured a portion of the form application

---

[4] Paschall included the following language, in bold:

*NOTICE OF NON-RETALIATION REQUIREMENT
Title VII Section 704a of the Civil Rights Act of 1964, as amended, states:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

On July 13, 2016, I was wrongfully terminated. I entered into a dispute with MLGW under Title VII of the Civil Rights Act of 1964 seeking reinstatement to my position with the company. Pursuant to that, even though my effective date that I could retire at that time was 7/14/2016, Pension Policy states that my election to do so would be irrevocable. The dispute has just been settled. Therefore I am now electing for full retirement benefits, retroactively effective to that date, as I have per Section 7.6 of the plan, properly and timely applied for benefits.

he submitted, and he explained that, because his underlying employment dispute with MLGW had recently been settled, he was "electing for full retirement benefits, retroactively effective" to his July 2016 termination. (ECF No. 29 at PageID 714–15; ECF No. 27-11 at PageID 546.) On June 28, 2022, Paschall submitted a revised application, which included the almost identical Title VII language on a separate sheet, and the same language that he had "properly and timely applied for benefits," under Section 7.6 of the Plan Document. (ECF No. 27-13 at PageID 551–52.) Defendants never disputed Paschall's right to his benefits upon proper application. (ECF No. 31 at PageID 1696.)

Defendants initially rejected Paschall's May 10, 2022 application based on his inclusion of the Title VII language, because the form was not completed, and because he sought retroactive benefits to the time he was terminated. (Id. at PageID 1700–01.) After initially rejecting his June 28, 2022 application, Defendants accepted the application upon appeal after redacting Paschall's Title VII-related attachment, and awarded Paschall benefits payments effective as of June 28, 2022. (Id. at PageID 1701, 1702.) As of August 2024, Plaintiff was paid his service retirement benefits back to June 28, 2022, in a lump sum. (Id. at PageID 1711.)

On November 21, 2022, Paschall filed a charge with the Tennessee Human Rights Commission, which was later transferred to the EEOC for investigation. (ECF No. 31 at PageID 1708–09.) The EEOC issued its Determination and Notice of Rights letter on September 29, 2023. (ECF No. 1-7.)

---

Please be advised that also under Title VII (See Above), denial of my full benefits will be considered retaliation and unlawful discrimination.

(ECF No. 27-11 at PageID 546.)

4

Paschall asserts two retaliation claims against Defendants under Title VII, which protects individuals who make charges, testify, assist, or participate in enforcement proceedings. 42 U.S.C. § 2000e-3(a).[5] The first count alleges that Defendants retaliated against him for filing a charge with the EEOC and for filing his federal lawsuit, in violation of Title VII's participation clause. (ECF No. 11 at PageID 221–224.) Title VII's participation clause prohibits an employer from discriminating against an employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The second count alleges that Defendants retaliated against him for opposing their conduct against him, in violation of Title VII's opposition clause. (Id. at PageID 224–25.) The opposition clause makes it unlawful to discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

In their summary judgment motion, Defendants assert that Paschall cannot make out a prima facie case for retaliation. First, they assert that he cannot establish that he engaged in protected activity when he added language to his application for pension benefits, as this did not constitute opposition made in a reasonable manner, and, by altering the form application, he violated their legitimate rules. (ECF No. 26-1 at PageID 452–53.) Defendants further assert that there is no genuine issue of fact as to why it denied Paschall's request for retroactive benefits, as it was relying on the language of the Plan Document. (Id. at PageID 455.) They assert that, while there was an open question at the motion to dismiss stage as to whether the Plan Document

---

[5] On May 14, 2024, the Court granted in part and denied in part Defendants' Motion to Dismiss, (ECF No. 23), dismissing Paschall's claim under 42 U.S.C. § 1981, and limiting his potential recovery to $300,000 (see id.)

was being withheld from Paschall and whether he would have acted differently had he been provided access to it earlier, the record now demonstrates that Paschall had access to the 2016 Summary Plan Description at the time of his termination, that he was later provided a copy of the virtually identical 2018 Summary Plan Description upon his request, that he was informed that the full Plan Document was available to the public by making a public records request, and that he had access to the full Plan Document during his employment. (Id. at PageID 456.) Ultimately, Defendants assert that Paschall has received "all of the benefits to which he is entitled under the terms of the Plan Document," which means "he did not suffer an adverse employment action or otherwise sustain any damages as a result of Defendant's actions." (ECF No. 30 at PageID 1689.)

## ANALYSIS

### I. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can prove the absence of a genuine issue of material fact by showing a lack of evidence to support the non-moving party's cause. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Although the court views all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

The movant has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to go

beyond the pleadings and designate specific facts showing there is a genuine issue for trial. Id. at 324 (quotations omitted). Ultimately, in evaluating the appropriateness of summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

## II.     Paschall's Claims for Retaliation

The standard for evaluating Paschall's Title VII claims is the same under both the participation and opposition clauses. "[U]nder Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a prima facie case under the McDonnell Douglas framework." Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003) (citing Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful retaliation was a motivating factor in the employer's action." Id. (citing Laderach v. U–Haul of Nw. Ohio, 207 F.3d 825, 829 (6th Cir. 2000)). Direct evidence "proves the existence of a fact without any inferences or presumptions." Davis v. Metro Parks & Recreation Dep't, 854 F. App'x 707, 714 (6th Cir. 2021) (citation omitted). "Direct evidence of discrimination is rare because employers generally do not announce that they are acting on prohibited grounds." Erwin v. Potter, 79 F. App'x 893, 896–97 (6th Cir. 2003) (citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)).

Absent direct evidence, a party can make a case for retaliation by relying on the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248 (1981). Taylor v. Donahoe, 66 F. Supp. 3d 993, 1000 (W.D. Tenn. 2014) (citations omitted). Under that familiar framework, plaintiffs have "the initial burden to establish a prima facie case of retaliation." Id. If the plaintiff satisfies this low

burden, the defendant then "has a burden of production to articulate a nondiscriminatory reason for its action. If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation." Wyatt v. Nissan N. Am., Inc., 999 F.3d 400, 419–20 (6th Cir. 2021) (quoting E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 767 (6th Cir. 2015)). To demonstrate the proffered reason was mere pretext, the plaintiff must demonstrate by a preponderance of the evidence that the reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." Abbott, 348 F.3d at 542 (citing Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994)).

Despite his assertions to the contrary, Paschall has offered no direct evidence of retaliation. He argues that, when the Pension Department rejected his applications for benefits by citing to his Title VII references in his applications for benefits, and when the Pension Board later adopted those same positions, it sufficiently established direct evidence of retaliatory animus. (ECF No. 28 at PageID 689.) Paschall asserts that Defendants passed a rule that applied only to him and limited him to twenty minutes during his hearing before the Pension Board,[6] which constitutes further evidence of retaliatory animus and causation. (Id. at PageID 689–90.)

None of these facts, even viewed in a light most favorable to Paschall, establish direct evidence of retaliation. The evidence does not prove that the Pension Board's actions were retaliatory in nature without inferences or presumptions. "Whatever the strength of the evidence, it is not 'direct' evidence if it admits more than one plausible interpretation, and requires a

---

[6] Although Paschall asserts that the Pension Board only allowed him twenty minutes to present his case at the hearing on the matter, Defendants assert that, not only was he able to make his full presentation to the Pension Board during that time, but also counsel for MLGW was allotted the same amount of time, and both parties were afforded additional time during an open question-and-answer session with the Pension Board. (ECF No. 31 at PageID 1702–03.) Paschall has not established a question of material fact as to whether he was improperly limited from making his case before the Pension Board.

significant inference or presumption on the part of the trier of fact." Kocak v. Cmty. Health Partners of Ohio, Inc., 400 F.3d 466, 471 (6th Cir. 2005) (citation omitted) (cleaned up). To conclude that the actions Paschall describes were retaliatory, one would have to presume that Defendants' rejection of Paschall's applications and their determination that he was not entitled to retroactive benefits was merely pretext. One would also have to presume that the Pension Board's twenty-minute limitation on Paschall's hearing presentation was somehow a retaliation against Paschall, even though the Pension Board placed the same time restraint on MLGW at the hearing and allowed the parties additional time to interact with the Pension Board. At bottom, Paschall's proffered evidence is not direct evidence of retaliation because it does not compel a reasonable factfinder to conclude that the actions he describes constitute retaliation. See id.

In the absence of direct evidence, Paschall must rely on circumstantial evidence, and the McDonnell Douglas burden-shifting framework. The first step in that process, establishing a prima facie case of retaliation, requires a party to show the following: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." Taylor, 66 F. Supp. 3d at 1000 (quoting Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014)). The burden of establishing a prima facie case "is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." Id. (quoting Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)).

Defendants assert that Paschall has failed to make a prima facie case of discrimination, warranting summary judgment in their favor even before the burden shifts to them to articulate a

9

nondiscriminatory reason for rejecting Paschall's benefits applications and denying his request for retroactive benefits. Defendants argue that Paschall has failed to demonstrate that he engaged in protected activity, or that they took a materially adverse action against him, or that there was a causal connection between his protected activity and the materially adverse action.

As a starting point, Defendants acknowledge that they "do[] not dispute that Plaintiff engaged in protected activity when he filed a lawsuit against MLGW in 2017" (ECF No. 26-1 at PageID 452.) But Defendants then cast too narrow a focus by arguing that Paschall failed to demonstrate that he engaged in protected activity when he added Title VII-based retaliation language to his applications for benefits. Even if Paschall's inclusion of the Title VII-based retaliation language did not constitute protected activity,[7] the filing of Paschall I, along with the filing of his EEOC complaints, satisfy his burden of demonstrating he engaged in protected activity under the participation and opposition clauses.

---

[7] A question of fact exists as to whether Paschall's inclusion of the Title VII language in his May 10, 2022 benefits application was protected activity, particularly under his Title VII opposition clause claim. Defendants argue that the inclusion was an unreasonable violation of its rules. (See ECF No. 26-1 at PageID 453.) They argue that "[t]he application was no place to lodge such a complaint or, for that matter, a premature complaint." (Id.)
 The Court is dubious that Paschall's inclusion of the Title VII language on his applications violated Defendants' rule that "[c]laims for benefits under the Plan may be filed with, and on forms supplied by, the Pension Department," as Defendants assert. (Id.) After all, the applications were submitted on the Defendants' forms, albeit with added information which, at least in the first instance, could not be redacted from the submission, and the Plan Document contemplated the submission of additional evidence with an application. (ECF No. 29 at PageID 721.) It is true, as Defendants point out, that "courts have generally granted less protection for opposition than for participation in enforcement proceedings." (ECF No. 30 at PageID 1693 (quoting Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir. 1989).) Nevertheless, at the very least, a question of fact exists on the issue as to whether Paschall's submissions were a violation of Defendant's legitimate rules. This is particularly evident because Defendants granted Paschall's second request for benefits, on appeal, after having redacted the Title VII language that he included in both applications.

10

Paschall has also demonstrated that Defendants took an adverse action against him. Defendants assert that they took no adverse action against Paschall because they were simply following the dictates of the Plan Document. However, there is no dispute that, by denying Paschall's request that his benefits be retroactively applied to his termination date, he would receive less retirement benefits.[8] A retirement benefits decision that results in the loss of potentially significant amounts of money qualifies as an adverse action.

Finally, Paschall has also met the low burden of demonstrating the final element of his prima facie claim—a causal connection between his protected activity and the materially adverse action Defendants took against him. Defendants assert that "Plaintiff has presented no evidence to suggest the Pension Board made the decision to deny Plaintiff's request for retroactive benefits on anything other than the language of the Plan, particularly section 7.6 of the Plan." (ECF No. 26-1 at PageID 455 (citation omitted).) The Board insists that its "interpretation tracks the plain language of the Plan Document." (ECF No. 30 at PageID 1690.)

Paschall has offered less proof as to the causation element of his prima facie case, but, viewing the evidence in the light most favorable to him as the Court must do at this stage, the Court can deduce a causal connection between Defendants' retaliatory actions and Paschall's protected activity.

Defendants cling to what they deem a legitimate, longstanding interpretation of the Plan Document to argue that their denial of retroactive benefits to him cannot be connected to the protected activity he engaged in. However, Paschall has pointed to language from the Plan Document that suggests that his right to benefits was 100% vested and non-forfeitable, and that

---

[8] Paschall's expert report suggests that the denial of his request for retroactive benefits cost him as much as $444,214. (ECF No. 35-1 at PageID 1990.)

11

the Pension Board was obligated to take actions necessary to assure the timely payment of benefits to him.  (See ECF No. 28 at PageID 691, 693.)  Defendants counter that Paschall's "benefits have not been forfeited as contemplated under the Plan," as his "benefit was a right to receive payments calculated in accordance with the formula set forth in the Plan and commencing upon 'written election' of the Participant as provided in the Plan Document," and that "[n]othing in the Plan guarantees any Participant a right to receive a sum certain or a specified aggregate of payments."  (ECF No. 31 at PageID 1697–98.)

The evidence viewed in a light most favorable to Paschall establishes questions of fact as to whether Defendants eschewed the portions of the Pension Plan that supported his entitlement to benefits as of the date of his termination, as well as upon his initial application for benefits in May 2022, in favor of portions of the Plan Document that would result in him being denied benefits, and whether that decision was made based on the protected activity he previously engaged in.

Given the foregoing, Paschall has satisfied his low burden of establishing a prima facie case of retaliation.  The burden thus shifts to Defendants to demonstrate that there was a legitimate nondiscriminatory reason for their actions.

As outlined above, Defendants assert that the nondiscriminatory reasons for denying Paschall retroactive benefits, and denying his initial application for benefits, are that they were adhering to the terms of the Plan Document, and that Paschall's application failed to follow the applicable rules.  Defendants' burden "at this stage of the McDonnell Douglas analysis is not to prove the existence of a nondiscriminatory reason for the adverse employment action.  Rather, as the Supreme Court has instructed, 'This burden is one of production, not persuasion; it "can involve no credibility assessment."'"  Wheat v. Fifth Third Bank, 785 F.3d 230, 240 (6th Cir.

12

2015) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).  Thus, Defendants have satisfied this threshold.

Finally, the burden shifts back to Plaintiff to demonstrate that Defendants' proffered reasons were mere pretext, which he can do by showing by a preponderance of the evidence that the reasons have no basis in fact, did not actually motivate Defendants' adverse actions, or were insufficient to motivate the adverse actions.  "[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale."  Carter v. Toyota Tsusho Am., Inc., 529 F. App'x 601, 609 (6th Cir. 2013) (quoting Blair v. Henry Filters, Inc., 505 F.3d 517, 532 (6th Cir. 2007)).

Paschall makes the blanket assertion that he has met each of these prongs, asserting there is a genuine issue of material fact as to whether the denial of his applications based on the inclusion of the Title VII language and the denial of his retroactive benefits were based in fact, whether they actually motivated Defendants' actions, or whether they sufficiently motivated those actions.  (ECF No. 28 at PageID 697.)

According to Defendants, there is an absence of a question of material fact as to whether its reasons were pretextual.  They base this in part on the fact that Paschall has not shown that any other participant in the Pension Plan ever received retroactive benefits after having consciously decided to delay applying for years, or that a plan participant ever began receiving monthly pension payments without having made an application or having made only an altered or incomplete application.  (ECF No. 30 at PageID 1690.)

Defendants' argument that their "interpretation of the Plan was applied the same to Plaintiff as it was to any other Participant" (ECF No. 26-1 at PageID 450) is, at best, incomplete, as it never applied the Plan to anyone who engaged in the same actions as Paschall.  Although

13

the burden is Paschall's at this stage in the McDonnell Douglas analysis, as he points out, Defendants identified no instances where a participant inserted language into an application for retirement benefits or attached a document to a participant's application for retirement benefits or any instances where a participant sought retroactive retirement benefits. (ECF No. 31 at PageID 1699.)

As to whether Paschall has otherwise carried his burden of demonstrating pretext, although he cannot show that the actions taken by Defendants had no basis in fact, he has shown that a question of fact exists as to whether Defendants' articulated basis for denying him benefits were the actual motivation or, even more, were sufficient to motivate the adverse actions.

To establish pretext based on a claim that a defendant's proffered reason did not actually motivate its conduct, "the plaintiff may attack the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was more likely than that offered by the defendant.'" Cook v. McHugh, 193 F. Supp. 3d 866, 874 (M.D. Tenn. 2016) (quoting Smith v. Leggett Wire Co., 220 F.3d 752, 759 (6th Cir. 2000)). Under this type of showing, a plaintiff can "argue[] that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." Carter, 529 F. App'x at 610 (quoting Manzer, 29 F.3d at 1084).

Here, Paschall has pointed to sufficient evidence to rebut Defendants' arguments as to pretext and through which a jury could reasonably reject Defendants' explanation and infer that they retaliated against him. See Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003) (citation omitted). Specifically, Paschall has raised a genuine issue of material fact as to whether Defendants' proffered reasons for denying him retroactive retirement benefits, and for denying his initial application for benefits, were the actual motivation or were sufficient to motivate those

actions. This is especially so given that the Plan Document's provisions could be read in ways that would have allowed for Paschall to recover retroactive benefits, as well as benefits upon his first application in May 2022. In short, Paschall has carried his burden of creating a genuine issue of material fact regarding whether an illegal motive was more likely than the reason for the adverse actions offered by Defendants.

Given the foregoing, Paschall has carried his burden under McDonnell Douglas to demonstrate that, based on the circumstantial evidence in the record, there are genuine issues of material fact that preclude summary judgment as to all of his claims.[9]

## CONCLUSION

Consistent with the foregoing, Defendants Motion for Summary Judgment is **DENIED** as to Paschall's claims under both the participation and opposition clauses of Title VII.

**IT IS SO ORDERED,** this 27th day of February, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] Defendants also argue that summary judgment is warranted as to the discrete acts that occurred prior to the 300 days before November 21, 2022, the day Paschall filed his latest charge of discrimination. (ECF No. 26-1 at PageID 459–60.) As the Court explained in its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, "it is not clear what impact, if any, eliminating any time-barred retaliatory actions would have on Paschall's claims in this lawsuit." (ECF No. 23 at PageID 423.) It is clear now that, given that the retaliatory actions Paschall complained of occurred on May 10 and June 28, 2022, which are both within the applicable 300-day window of the filing of Paschall's latest charge of discrimination, his claims are timely. Defendants Motion is therefore **DENIED** on these grounds.